UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO: |
| | ) | JUDGE |
| RUTHERFORD COUNTY, TENNESSEE, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff United States of America alleges as follows:

### JURISDICTION AND VENUE

1. The United States brings this action for a temporary restraining order, preliminary and permanent injunction, and other equitable relief to enforce the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc–2000cc-5, against Rutherford County, Tennessee.

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 2000cc-2(f).

3. Venue is proper in this district because the claims alleged herein arose in the Middle District of Tennessee. 28 U.S.C. § 1391.

### PARTIES

4. The Plaintiff is the United States of America.

5. The Defendant is Rutherford County, Tennessee. Rutherford County is a "government" within the meaning of RLUIPA, 42 U.S.C. § 2000cc-5(4)(A)(i), (ii). Rutherford County is a government subdivision capable of being sued under Tenn. Code. Ann. § 5-1-105

(1972). The County has the authority to regulate and restrict the use of land within its borders. See Tenn. Code Ann. § 5-1-118 (2003).

6. Rutherford County regulates and restricts the use of land within its borders, at least in part, through the actions of a Regional Planning Commission and Board of Zoning Appeals.

7. Land use in those areas of Rutherford County that are located outside the planning jurisdictions of local municipalities is governed by the Rutherford County Zoning Resolution (2011) (the "Zoning Resolution"). Section 1.04 of the Zoning Resolution provides that churches and religious assemblies are uses-by-right within residential districts.

8. Article 5 of the Zoning Resolution provides that the Planning Commission has the authority to grant approval for site plans for certain permitted and conditional uses, including but not limited to churches and other religious structures in excess of 3,000 square feet. Once a site plan is approved, the applicant is then free to seek any other required permits, including a building permit. Zoning Resolution, § 5.07.

9. Section 22.01 of the Zoning Resolution establishes the office of the Building Commissioner, which is, among other things, responsible for the enforcement of the Zoning Resolution, and has the power to make inspections of buildings and premises.

10. Section 22.02 of the Rutherford County Zoning Resolution governs the issuance of building permits and provides, among other things, that it shall be unlawful to commence the excavation or construction of any building until the Building Commissioner issues a permit. Under Section 22.02, an applicant for a building permit is required to submit a

plan indicating the proposed building(s), state their intended use, and supply such other information as the Building Commission shall require.

11. The activities of the Planning Commission are subject to the requirements of the Tennessee Open Meetings Act. Tennessee Code. Ann. § 8-4-101 *et seq.*

## FACTS

12. From the time that it announced plans in 2009 to construct a new mosque in Rutherford County, Tennessee, the Islamic Center of Murfreesboro ("the Islamic Center") has been the subject of intense and sometimes violent community opposition. Opponents held a rally against the mosque. Its property has been vandalized. A large construction vehicle has been set on fire, and the Islamic Center was the victim of a bomb threat. A group of opponents also initiated legal action in state court in 2010 which included unfounded allegations that the presence of the mosque would lead to terrorism and the baseless claim that the Islamic Center was not entitled to the religious exemption in the local zoning ordinance because Islam is not a religion. It is the actions of these opponents in the 2010 lawsuit that have resulted in the Islamic Center's previously approved site-plan permit being declared void and an injunction issuing from the Chancery Court on June 13, 2012, that prohibits the County from granting the Islamic Center a certificate of occupancy. With construction now complete and the Islamic Center having requested a certificate of occupancy, the County has refused, because of the Chancery Court's recent order, to perform a final inspection, which is a prerequisite to issuing a certificate of occupancy.

13. The ability to take occupancy of the new Islamic Center by the start of Ramadan on July 20th is critically important to the members of the Islamic Center. The new facility can accommodate at least 500 worshippers, far more than the current facility, and will allow the community to worship together at what is for them the holiest time of the year.

Occupancy by Ramadan in 2012 has long been a goal of the Islamic Center. The contract with the general contractor specifically stated that the project must be completed by Ramadan. The Imam made a promise to the youth of the Islamic Center last year that despite the controversy, the crimes of arson, threats, and vandalism against them, that religious freedom and equality would prevail and that they would be able to worship in their new mosque for Ramadan this year.

14. Without a certificate of occupancy, the Islamic Center will not be able to legally take occupancy by Ramadan. Many members would be denied the ability to worship, and those who were able to worship would be subjected to overcrowded facilities, including the insufficient ritual washing facilities that led them to build the new facility.

15. The Islamic Center is a public-benefit corporation organized and existing under the laws of Tennessee. Its principal office is located in Murfreesboro, Tennessee. The Islamic Center has been operating in Murfreesboro since 1982, and was originally called Masjed Al-Imman.

16. The Islamic Center serves approximately 250-300 Muslim families in the Murfreesboro area, as well as 400-500 Muslim students attending Middle Tennessee State University.

17. Among other things, the Islamic Center hosts prayer services, celebrations of religious holidays, and various religious educational activities, and it engages in and coordinates religious charitable activities and interfaith and civic events.

18. The Islamic Center is a "religious assembly or institution" within the meaning of RLUIPA, 42 U.S.C. 2000cc(2)(b)(2). "Mosque" is a general term for buildings used for worship by Muslims.

19. The Islamic Center currently operates in a 2,100 square-foot facility that is inadequate to serve the needs of its congregation. Due to insufficient space in the prayer hall, members pray in corridors and spill out into the parking lot during services. There is no room for child care facilities, and children play outside, often distracting worshippers and creating an unsafe environment for the children. Many members of the Muslim community, especially the elderly and families with young children, have stopped attending prayer services as a result of these conditions. Far fewer people are able to attend services than wish to.

20. There are inadequate facilities at the current site to perform the ritual washing required before prayer.

21. The current facility lacks space for a proper religious library and religious programs for youth.

22. The current facility is too small for funeral rituals and religious holidays.

23. In 2009, the Islamic Center began looking for a site to build a larger facility and purchased approximately 15 acres of real property located on Veals Road in Rutherford County, a property located in a residential zoning district in which places of worship are allowed as of right.

24. On or about November 2009, the Islamic Center posted a sign on the Veals Road property that read, "Future Site of the Islamic Center of Murfreesboro."

25. On or about January 2010, the Islamic Center's sign was vandalized and the words "Not Welcome" were painted on it. The sign was replaced.

26. On or about May, 2010, the Islamic Center applied to Rutherford County for site-plan approval for the construction of a religious center, the first phase of which is a 12,000

5

square-foot mosque, on its Veals Road property. The new center would have adequate space and would permit more than 500 members to worship, would have adequate facilities for ritual washing, space for youth activities, and space for holiday celebrations and other events.

27. On or about May 24, 2010, the Planning Commission held a regularly scheduled meeting and reviewed, among other things, a site plan submitted by the Islamic Center.

28. Prior to holding its meeting on May 24, 2010, the Planning Commission advertised the meeting in the form of a notice published in the Murfreesboro Post, a newspaper of general circulation in Rutherford County. Notice of the May 24, 2010 meeting appeared in both the print and online versions of the Murfreesboro Post newspaper. The Tennessee Open Meetings Act provides that before a meeting the government should "give adequate public notice of such meeting." Tenn. Code Ann. §13-7-105.

29. Doug Demosi, the Rutherford County Planning Director, treated the Islamic Center's site-plan application no differently than he would have treated an application from a church or any other religious organization.

30. With the exception of inadvertently failing to post notice of the meeting on the County's internet web page, the County provided notice of the May 24, 2010 meeting in the same manner it provided notice for other religious and secular land-use applications.

31. There was no requirement that the May 24, 2010 meeting be a public meeting, and the meeting was not, in fact, open to the public.

32. At the May 24, 2010 meeting, the Planning Commission approved the Islamic Center's Veals Road site plan by a vote of 10 to 0.

6

33. Following the May 24, 2010 Planning Commission vote, the Islamic Center sought and obtained a building permit from Rutherford County authorizing the construction of a 12,000 square foot mosque on the Veals Road property.

34. On June 17, 2010, the Rutherford County Board of Commissioners held a meeting at which the Islamic Center's building proposal was discussed. Twenty-one Rutherford County residents spoke in connection with the Islamic Center at that meeting.

35. On or about June 23, 2010, the Islamic Center's second sign on the Veals Road property was vandalized and broken in half.

36. On July 14, 2010, a rally by several hundred opponents of the Islamic Center's new mosque was held in the public square in Murfreesboro.

37. In August 2010, site work for the construction of the mosque began on the Veals Road property.

38. On or about August 28, 2010, and during the Muslim holy month of Ramadan, a large construction vehicle at the Veals Road construction site was intentionally set afire. The Federal Bureau of Investigation has offered a $20,000 reward in connection with an investigation into the fire. The arson remains unsolved.

39. Because of the public opposition to its Veals Road project, the Islamic Center had significant difficulty obtaining construction services. Several general construction contractors declined to work on the Veals Road project because of the public outcry described above.

40. Another general-construction contractor initially agreed to work on the Veals Road project, but was later forced to withdraw when he could not locate or contract with sub-contractors willing to work on the project.

41. The Islamic Center has had to pay a security guard to protect its Veals Road property during hours that construction is not actively underway.

42. On September 16, 2010, four Rutherford County residents filed an action in Rutherford County Chancery Court against, among others, the Planning Commission; the Rutherford County Board of Commissioners; the Office of the County Mayor; and the Chief Executive Officer for Rutherford County. The suit alleged that the County violated various provisions of Tennessee law, including the Tennessee Open Meetings Act, when it approved the Islamic Center's site plan.

43. On September 22, 2010, the plaintiffs filed an amended complaint requesting damages and temporary injunctive relief enjoining the construction of the mosque. The plaintiffs alleged that the County had acted arbitrarily and capriciously in determining that the Islamic Center should be treated as a religious use under the Zoning Resolution. They alleged that the County violated the plaintiffs' rights under the Due Process Clause of the United States and Tennessee Constitutions when the County allegedly failed to determine whether the Islamic Center is entitled to protection under the First Amendment. They alleged that they would be harmed by the risk of terrorism that would flow from the presence of the Islamic Center.

44. An evidentiary hearing on the plaintiffs' request for temporary injunctive relief was held on various days from September 27, 2010, through November 17, 2010.

45. On November 23, 2010, the Chancery Court denied the plaintiffs' request for temporary injunctive relief. In its written opinion, the Chancery Court noted the "intense passion which has gripped this town because of this issue and to some extent because of this proceeding pending in this Court."

46. The Court held, in part, that the County had not acted arbitrarily or capriciously in determining that the Islamic Center met the Zoning Resolution definition of a church or religious meeting place.

47. On May 17, 2011, the Chancery Court denied the County's motion to dismiss the plaintiffs' claims under the Tennessee Open Meetings Act. The Court dismissed the plaintiffs' remaining claims, including, but not limited to, their claim that the Islamic Center is not a church or religious meeting place.

48. On or about September 5, 2011, the Islamic Center received a threatening phone call stating that a bomb would be placed at the Islamic Center on September 11, 2011.

49. Since 2000, the County has approved at least twenty church site use plans, and has used the same procedures as were used to approve the Islamic Center's proposal.

50. On May 29, 2012, the Chancery Court ruled that the Planning Commission had not provided adequate notice, as required by the Tennessee Open Meetings Act, of its May 24, 2010 meeting. It then held that the Planning Commission's actions approving the Islamic Center's site plan were void. It incorporated this ruling into an Order on June 1, 2012.

51. In holding that the County had not provided adequate notice of its May 24, 2010 meeting, the Chancery Court construed the Tennessee Open Meetings Act as imposing additional notice requirements where "significant business is discussed at an otherwise routine public meeting."

52. Specifically, the Chancery Court held that whether proper notice was provided under the Open Meetings Act depends on "the totality of the circumstances." The Court held, "Where only routine matters are discussed at a regularly scheduled meeting, comparative

9

little notice may be necessary. By contrast, when a major issue of importance to all citizens is being discussed at a specially called meeting, the greatest notice available may be required."

53. The Chancery Court specifically found that "the [May 24, 2010] meeting at issue was a regularly scheduled meeting, but a meeting where an issue of major importance to citizens was being discussed. Thus, some reasonable means of notice, not only of the meeting, but also of the particular issue before the body, was reasonably required." The Chancery Court's opinion included the following statement adopting the plaintiff's view of the controversy surrounding the mosque: "The Plaintiffs argue persuasively that the issue before us was in fact a matter of great public importance and a matter of tremendous public interest."

54. The record reflects that the plaintiffs' argument as to why the construction of the mosque was "a matter of great public importance" was based on animus by some members of the public against the religion of Islam and not on religion-neutral concerns about the project itself.

55. On or about June 13, 2012, the Chancery Court, based on its May 29, 2012, ruling and June 1, 2012 Order, made an oral ruling enjoining the County from issuing a certificate of occupancy for the Veals Road mosque or engaging in "further process" regarding the property.

56. On June 21, 2012, the County appealed the Chancery Court's May 29 ruling to the Tennessee Court of Appeals, and petitioned the Chancery Court for a stay pending appeal.

10

57. On July 2, 2012, the Chancery Court held a hearing on the petition for a stay. At the hearing, counsel for the plaintiffs stated to the Court, "The bottom-line issue is, is this Court going to put some teeth in the law, or is this going to be the first ruling in the small town of Rutherford County where the Court's going to recognize and honor Sharia law. It's that simple." Plaintiffs' counsel's argument was followed by cheers from the audience, which went uninterrupted for approximately one minute. The Chancery Court orally denied the request for a stay.

58. On July 13, 2012, construction of the Veals Road mosque was substantially completed, and the Islamic Center's builder contacted the County to request an inspection on Monday, July 16, in order to obtain a certificate of occupancy. By letter dated July 17, the County informed the builder that because of the Chancery Court's order, the County was unable to process the Islamic Center's request for a certificate of occupancy.

## SUBSTANTIAL BURDEN ON RELIGIOUS EXERCISE

59. The United States realleges and incorporates Paragraphs 1-58 of this complaint.

60. By the conduct set forth above, the County has imposed or implemented a land-use regulation that imposes a substantial burden on the religious exercise of the Islamic Center and its members, which burden is not in furtherance of a compelling governmental interest and/or is not the least restrictive means of furthering such interest, in violation of RLUIPA, 42 U.S.C. § 2000cc(a).

61. For purposes of RLUIPA, the County's denial of the Islamic Center's plans to construct a worship facility "affects interstate commerce." 42 U.S.C. § 2000cc(a)(2)(A).

## PRAYER FOR RELIEF

WHEREFORE, the United States prays that this Court enter an order:

1. Declaring that Defendant's policies and practices, as alleged herein, violate RLUIPA;

2. Enjoining Defendant, its officers, employees, agents, successors and all other persons in concert or participation with it, from imposing a substantial burden on the Islamic Center's religious exercise that is not narrowly tailored to serve a compelling governmental interest through the least restrictive means; and

3. Requiring Defendant, its officers, employees, agents, successors and all other persons in concert or participation with it, to take such actions as may be necessary to restore, as nearly as practicable, the Islamic Center and its members to the position they would have been in but for Defendant's conduct in violation of RLUIPA; and

4. Requiring that Defendant, its officers, employees, agents, successors and all other persons in concert or participation with it to process, in a nondiscriminatory manner, the Islamic Center's request for a certificate of occupancy by July 19, 2012, notwithstanding the Chancery Court orders of June 1, 2012 and June 13, 2012.

The United States further prays for such additional relief as the Court deems necessary or the interests of justice may require.

Dated: July 18, 2012

*signature*

JERRY E. MARTIN
United States Attorney
for the Middle District of Tennessee

*signature*

MATTHEW M. CURLEY
Civil Chief
United States' Attorney's Office
110 9th Ave., South, Suite A961
Nashville, TN 37203
Tel. (615) 736-5151
matthew.curley@usdoj.gov

ERIC H. HOLDER, Jr.
Attorney General

*signature*

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

*signature*

STEVEN H. ROSENBAUM
Chief

*signature*

MICHAEL S. MAURER
Deputy Chief
ERIC W. TREENE
Special Counsel
SEAN R. KEVENEY
MAZEN BASRAWI
 Trial Attorneys
Housing and Civil Enforcement Section
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530
Tel. (202) 514-4838
eric.treene@usdoj.gov