UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| v. | ) NO. 3:12-0737 |
| | ) JUDGE SHARP |
| | ) |
| | ) |
| | ) |
| RUTHERFORD COUNTY TENNESSEE | ) |

## MEMORANDUM IN SUPPORT OF
## MOTION TO INTERVENE

Henry Golczysnski, Lisa Moore, Kevin Fisher, John Lilley, Marlena Gregory, Caleb Gregory, Brian Gregory, June Lilley Holt, Jim McCormack III, Annmarie Shannon, Shane Davis, and Ronald Todd, residents and landowners in Rutherford County who are prevailing Plaintiffs in the Chancery Court of Tennessee Sixteenth Judicial District at Murfreesboro, (Fisher, et al. v. Rutherford County Regional Planning Commission, et al., No. 10-cv-1443 ("Chancery Proceeding No. 10-cv-1443), and (Fisher, et al. v. Rutherford County, et al., No. 12-cv-853 ("Chancery Court Proceeding No. 12-cv-853)(or collectively "The Chancery Court Proceedings") and adjacent or neighboring property owners of the Islamic Center of Murfreesboro ("ICM") in Rutherford County, Tennessee ("Rutherford Intervenors"), whereby submit through counsel this Memorandum In Support of their Motion to Intervene pursuant to Rule 24(a) in order to file the attached Proposed Emergency Motion to Dissolve the Temporary Restraining Order of the United States as follows:

# I. MOVANTS HAVE A RIGHT TO RESPOND TO FALSE ALLEGATIONS IN THE COMPLAINT OF THE U.S. ATTORNEY

The Complaint filed by the Office of the U.S. Attorney makes false allegations about the pleadings and the proof in the Chancery Court proceedings which include the following:

## (A) Paragraph 12

Paragraph 12 falsely alleges that the Movants herein pursued a "baseless claim that the Islamic Center was not entitled to the religious exemption in the local zoning ordinance because Islam is not a religion." Apparently the U.S. Attorney bases his claim in the media misrepresentations and distortions of the case- not the pleadings or evidence in the record. In one of the first pleadings filed in response to the Brief Amicus by the U.S. Attorney, it is affirmed that Islam has historically held the status of a religion although the question was unresolved as a matter of law and precedent in the Courts of the United States.

## (B) Paragraph 28

Paragraph 28 inaccurately claims that the Murfreesboro Post was a newspaper of general circulation in the Rutherford County at the time it advertised the May 24, 2010 meeting. In December of 2009, the office of the Tennessee Attorney General issued a ruling that it would no longer issue determinations of the status of "newspapers of general circulation," because the "development and interpretation of facts related to the newspaper business, such as circulation and distribution practices and reader interests in relevant markets, ... are outside the scope of this office's knowledge and experience and difficult to verify." Consequently, there was no standard of law defining "newspapers of general circulation" from 2009 until the present time and the Tennessee case law interpreting that

standard are also put into question. TN Atty Gen Op 09-137 validating the Murfreesboro Post as a newspaper of general circulation required a minimum distribution of its printed newspapers throughout Rutherford County in the amount of 45,000 copies. William Fryar, proprietor of the Murfreesboro Post, 2010, confirmed its distribution volume as only 21,325, which only 8% of the population - less than half of that required by TN Atty Gen Op 09- 137. This is only 8825 less than the 12,500 volume distribution of the Rutherford Reader which reached only 5% of the Rutherford County population, which TN Atty Gen Op 09-13 7 found to be inadequate. The decline in circulation by more than 50% to 21,375 in 2010 would require a finding that by May 2, 2010 the Murfreesboro Post had lost its status under TN Atty Gen Op 09-137 as a "newspaper of general circulation" when the advertised notice of the May 24 meeting was placed.

### (C) Paragraph 30

Paragraph 30 of the Complaint falsely implies that the Defendant Rutherford County issued a notice of the May 24, 2012 meeting of the Rutherford County Regional Planning Commission ("Rutherford County Planning Commission") to approve the site plan of the Islamic Center of Murfreesboro ("ICM") just like it did every other previous approval of other religious institutions. The findings of fact of the Chancery Court in the Memorandum & Final Order dated May 30, 2012 are that:

- Defendants purported to advertise all its public meetings on the County internet site, but the evidence showed that there was no advertisement of the May 24 Planning Commission meeting included on the County website.

- the county posted agendas for meetings on the County website, but no agenda was published for this meeting until after the meeting occurred and testimony revealed that as of

May 27, three days after the meeting the County website had not been updated to show that there was a meeting on May 24. The only meeting advertised on the website was the May 10 meeting, which misled citizens to believe the May 24 meeting had been cancelled.

- The Murfreesboro Post carried an advertised notice of the meeting without an agenda in relatively small type near the bottom of a page, which contained a number of advertisements and legal notices, most of which were provided by the City of Murfreesboro.[1] The Murfreesboro Post had virtually no paid circulation at the time of the advertised notice of the meeting. 13,000 free newspapers were thrown into Murfreesboro City driveways, 8000 were placed in racks within the cities of Murfreesboro, Smyrna, Lavergne, and Eagleville and unincorporated areas of the county. No papers were delivered to the area where the ICM site was to be located, and the nearest distribution rack was some three (3) miles away for those living near the proposed ICM site.

- Only 196 papers were placed in racks in the unincorporated areas of the County, despite the fact that approximately one-third of the county's citizens - over 81,000 people- live in that area.[2]

- Additionally, there was no distribution in several other zip codes and communities, including Readyville, Milton, Fosterville, Nolensville, or Mount Juliet.[3]  - Only thirty-five (35) persons could have viewed the internet version of the Murfreesboro Post with the

[2] Plaintiffs' expert testimony used U.S. Census data to show that the notice reached less than 1/4 of 1% of the citizens subject to County zoning.

[3] A key requirement of a "newspaper of general circulation" in previous Attorney General Opinions was that a distribution in every zip code of the County.

notice within the 30 days before the meeting.[4]

- The County operates a cable television station, but carried no notice of the meeting.

- Many County officials had no knowledge of the matter being considered. Only nine (9) of the twenty-one (21) county commissioners received the Murfreesboro Post on a regular basis, and of these 9, eight (8) of them received home delivery and only one used a distribution rack.

No part of the Chancery Opinion addressed a separate standard for "religious" institutions, so its findings were religiously neutral. Nothing in the Chancery Opinion addressed the nature and extent of "adequate notice" required under the Tennessee Open Meetings Act beyond the "totality of the facts and circumstances" of this case.

Although not cited by the Chancery Court in its opinion, the most compelling testimony of the inadequacy of the notice was given by Commissioner Sandlin, who attended the May 24, 2010 meeting of the Rutherford County Planning Commission and testified: "Nobody was there,". Landowners and neighbors want to know about the cemetery but did not have attend because they did not know about the meeting. When Sandlin asked whether landowners were notified. Demosi answered "no because it was a site approval, not a 'rezoning,'"(Sandlin testimony, pp.275, 276).

---

[4] That internet version failed to include an agenda for the May 24, 2010 meeting and did not meet the standard established pursuant to the 2000 Attorney General Opinion concerning internet notices.

### (D) Paragraph 54

Paragraph 54 falsely claims that Plaintiffs' argued that the construction of the ICM was a "'matter of great importance' based on animus by some members of the public against the religion of Islam and not on religion-neutral concerns about the project itself." As affirmed in the attached Declaration of Henry Golzynski, the questions of the Plaintiffs and other citizens related to:

(1) failure to notify most County Commissioners of the ICM pending approval and other deceptive irregularities in the County process for a 52,000 square foot multi-use facility, including a cemetery – a first for rural Rutherford County - a sportsfield, and failure to address drainage issues or require a turn lane on a rural county road in a "one-step" approval unlike any other in history of Rutherford County, and

(2) Activities of the ICM and its leaders that incited extreme concerns among the citizens of Murfreesboro, not about the religion of Islam, but about whether the ICM had ties to or were promoting various individuals affiliated with, and organizations that the U.S. Government had recognized as terrorist organizations .

Examples of testimony in the 2010 Court proceeding from Defendant County Commissioners and the citizens of the County included the following:

(a) Commissioner Robert Peay, in whose district the ICM site is located, testified that he had no advance notice of its approval, but went door-to-door after the May 24 meeting and discovered that his constituents were extremely upset, but not because the ICM was Islamic. " …most of the people that I talked to did not have a problem with the Islamic Center actually being in the district there, but they were highly concerned about the traffic." (Peay testimony p.42). Other concerns were:

- failure to require a turning lane normally required for any large facility on a small rural road throughout the County(Peay testimony, p. 42),

- the burial at the ICM site undisclosed to him and the other Commissioners (Peay testimony, p.50),

- the web page of ICM Board Member Mosaad Rawash which featured photographs of the leaders of Hamas, who were designated by the U.S. Treasury Department in 2003 as terrorists, which recognized martyrdom to kill Jews for Palestine, and featured AK-47's and desecrations of the U.S. and Israeli flags (Peay testimony, p. 57),

- News stories implicating ICM Board members Essam Fathy and Mosaad Rawash in rallies in the public square in 2009 and 2010 in support of the war in Gaza waged by Hamas, a U.S. designated terrorist organization(Peay testimony, pp. 58-60). (Peay testimony p.58.

(b) Commissioner Steve Sandlin testified his concerns about County deception on various "public interest" issues:

- the burial at the ICM site hidden from him and the other members of the Planning Commission when he voted on May 24, 2010 (Sandlin testimony, p. 268),

- the ICM sports field involving issues of hours of operation, lights and noise that Commissioners were told would be subject to later approvals,(Sandlin testimony, p. 278), and

- there was no adequate notice to "surrounding neighbors."…"there was nobody there" (Sandlin testimony p. 275) who would have had real concerns about any church coming in or any cemetery coming into the neighborhood (Sandlin testimony, p. 276).

(d) Addendum A filed by Plaintiffs in opposition to Defendants Motion for Summary Judgment summarized much of the information concerning the potential

terrorism risks. Submitted herewith as Addendum A to this motion, it summarizes the testimony of Murfreesboro citizens about what they saw that posed a risk outside any conceivable ICM "religious exercise." Citizen Elizabeth Coker testified to her request for an investigation on behalf of 20 citizen petitioners of the burial at the ICM site hidden from County Commissioners by Sheriff Truman Jones(Coker testimony p. 104), discovery of the MySpace page of ICM Board Member Mosaad Rawash calling for death to Jews and martyrdom for Palestine, and its depictions of AK-47's and pictures of the leaders of the Hamas terrorist organization (Coker testimony, p. 136, 139), and Plaintiffs' expert Tim Cummings testified to the ICM website and its Reading List of Muslim Brotherhood leaders, at least two of whom were unindicted co-conspirators in the Holyland Foundation case which concluded in criminal convictions in 2008 prosecuted by the U.S Department of Justice (the Plaintiffs in this cause). In addition, two expert witnesses for Plaintiffs, John Guandolo, former agent with the Federal Bureau of Investigation who monitored Muslm Brotherhood operations in the United States, gave deposition testimony and a sworn affidavit about risks attendant to the ICM because of its affiliations with the Muslim Brotherhood. Stephen Coughlin, a Sharia law expert, and former intelligence officer with the Pentagon gave deposition testimony about the Sharia law requirements imposed upon the ICM in its own documents that were predictors of risk to the public. The Chancellor declined to admit this evidence because the final trial in April was limited to the question of "adequate notice" under the Open Meetings Act. Since the U.S. Attorney in this proceeding is raising the question of the scope of "religious exercise" under RLUIPA, it is compelling evidence for the resolution of that issue.

### (E) Paragraph 52

Paragraph 52 is inaccurate in its suggestion that the Chancery Court invented the concept of "totality of circumstances" analysis out of whole cloth. The Chancery Court was bound by the rulings establishing that standard of the Tennessee Supreme Court interpreting the Tennessee Open Meetings Act in *Memphis Publishing Co. v. City of Memphis*, 5!3 S.W.2d 511(Tenn. 1974). Further, in a published decision binding on the Chancery Court, the Tennessee Court of Appeals held that any meeting deliberating what has become a "pervasive public issue," must publish that agenda item in any advance notice of the meeting for the notice to be "adequate." *Neese v. Paris Special School District*, 813 S.W.2d 432,(Tenn.Ct.App.1990). The evidence before the Chancery Court was that no notice published by the County about the May 24 Planning Commission Meeting contained information about the pending ICM approval. There are no Tennessee cases validating a bare meeting notice containing no agenda, and in all these cases where the notice element was upheld, several different forms of media were used such as radio and television. In most such cases where notice was upheld, there were large numbers of the public in attendance indicating the notice had been received. Even Open Records Counsel, who testified for the County at trial, admitted that there were no Tennessee cases upholding the adequacy of the notice where no members of the public with an interest in the agenda showed up.

Although there is no proof in the record, if Defendant Rutherford County had issued a notice under facts and circumstances were identical to the proof in this case, those notices, if challenged, would also be "inadequate," whether or not a religious institution were involved.

II.    LEGAL ARGUMENT FOR INTERVENTION

   A.  Rutherford Intervenors Can Intervene As A Matter Of Right Under Rule.
   24(a)(2)

   Under Rule 24(a)(2) a party has the right to intervene in an existing suit if: (1) a
motion is timely made; (2) the applicant has a substantial legal interest in the subject
matter of the case; (3) the applicant's ability to protect that interest may be impaired in the
absence of intervention; and (4) the parties already before the court may not adequately
represent the applicant's interest.    *Grutter v. Bollinger*, 188 F.3d 394, 397-98 (6th Cir.
1999)), rev'd on other grounds sub nom. *Gratz v. Bollinger*, 539 U.S. 244 (2003).  Under
this standard, Rutherford Intervenors should be permitted to intervene as a matter of right.

   The Motion for Intervention by Rutherford Intervenors is timely filed only nine
(9) days subsequent to the filing of the Complaint in compliance with the first
requirement.  Rutherford Intervenors are victims of the ICM and Defendant Rutherford
County's violation of the Rutherford County Zoning Resolution and the County
violation of The Tennessee Open Meetings Act and have particularized injury to their
constitutional rights to due process and equal protection as citizens. Consequently, they
easily satisfy the second requirement of Rule 24(a)(2) – a substantial legal interest in the
matter before this Court.  See *Grutte*r, 188 F.3d at 398-99 (the Sixth Circuit has an
expansive notion of the interest sufficient to invoke intervention of right).

   Since the Temporary Restraining Order already issued by this Court appears to
validate the violation of the Tennessee Open Meetings Act, the disposition of this case
without the intervention of the Rutherford Intervenors will likely infringe upon their
Constitutional rights and impede their ability to protect their interests. An adverse
ruling by this Court on the existing Complaint would certainly hinder any future efforts

10

of Rutherford Intervenors to litigate the violation of their constitutional rights as citizens and landowners. *Linton v. Comm'r of Health & Env't,,* 973 F.2d 1311, 1319 (6th Cir. 1992) (holding that potential stare decisis effect alone can be a sufficient basis for finding an impairment of interest). Accordingly, the Motion to Intervene meets the third prong of Rule 24(a)(2) requirements, because the disposition of this case may impair or impede their ability to protect their interest.

Finally, in compliance with the fourth requirement, the interests of Rutherford Intervenors are not adequately represented by Defendant Rutherford County. Defendant Rutherford County cannot represent their interests as landowners and Intervenors adjacent to the ICM who are damaged by the violation of the Tennessee Open Meetings Act by Defendant Rutherford County as determined by the Memorandum and Order in Chancery Proceeding No.10-cv-1443. As a consequence of that decision, Defendant Rutherford County is permitting and encouraging the ICM in a continuing violation of T.C.A. §13-7-111[5] contending that such a violation of state law is protected by the

---

[5] It is **unlawful to erect, construct, reconstruct, alter, maintain or use any building or structure or to use any land in violation of any regulation in any provision of any ordinance** or any amendment thereof enacted or adopted by any county legislative body under the authority of this part. A violation of this part is a Class C misdemeanor. Each and every day during which such illegal erection, construction, reconstruction, alteration, maintenance or use continues is deemed a separate offense. In case any building or structure is or is proposed to be erected, constructed, reconstructed, altered, maintained or used or any land is or is proposed to be used in violation of this part or of any regulation or provision enacted or adopted by any county legislative body under the authority granted by this part, such county legislative body, the attorney general and reporter, the district attorney general for the judicial district in which such violation occurs or is threatened, the county building commissioner or any adjacent or neighboring property owner who would be specially damaged by such violation, in addition to other remedies provided by law, may institute injunction, mandamus, abatement or any other appropriate action, actions, proceeding or proceedings to prevent, enjoin or abate or

Religious Land Use and Institutionalized Persons Act("RLUIPA"). Mich. State AFL-CIO, 103 F.3d at 1247 (this requirement is met where parties are not making all of the arguments that the intervenor would make). Defendant Rutherford County has not made any of the arguments set forth in the Motion to Dissolve the Temporary Restraining Order filed contemporaneously herewith.

### B. Rutherford Intervenors May Be Allowed Permissive Intervention

Rule 24(b)(2) provides that a court may allow a party to intervene when the applicant's claim and the main action have common questions of law or fact. Permissive intervention is liberally granted to promote the convenient and prompt disposition of all claims in one proceeding. *City of Cleveland v. Cities Serv. Oil. Co.,* 47 F.R.D. 543, 546 (N.D. Ohio 1969). In exercising its discretion, the court must consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b). The history of the litigation before the Chancery Court of Rutherford County is an uncontroverted record that the claims of Rutherford Intervenors and Defendant Rutherford County share common issues of law and fact. Permitting intervention will promote judicial economy since Rutherford Intervenors have a right to file an action independent of this litigation. Since the Motion to Intervene is timely filed, allowing Rutherford Intervenors to intervene will not unduly delay or prejudice the adjudication of the rights of the original parties.

---

remove such unlawful erection, construction, reconstruction, alteration, maintenance or use.

## IV. RELIEF SOUGHT

The intervening Petitioners herein request hearing on the instant Motion be set for argument, prior to the July 30, 2012 hearing on the request of the U.S. Attorney for an injunction in this cause. Such an emergency hearing would be required in order to enable the intervening Petitioners to fully participate in the deliberations scheduled for that date with respect to the many issues affecting their interests, and the interests of other persons similarly situated in Rutherford County.

## V. CONCLUSION

For the reasons set forth herein, Rutherford Intervenors urge this Court to permit them to intervene as a matter or right under Rule 24(a), or, in the alternative, permissively under Rule 24(b). Pursuant to Rule 24(c).

Respectfully Submitted,

/s/

Joe M. Brandon

JOE M. BRANDON, JR. #016601
119 North Maple Street
Murfreesboro TN 37130
(615) 890-3656

/s/

J. Thomas Smith

J. THOMAS SMITH #003613
2020 Fieldstone Parkway
Suite 900-264
Franklin, Tennessee 37069-4337
(615) 790-2150

Dated: July 26, 2012

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was electronically filed this 26 day of July, 2012. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/
Joe M. Brandon