UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.  ) | NO. 3:12-0737 |
| ) | |
| RUTHERFORD COUNTY TENNESSEE ) | |

## REPLY TO U.S. RESPONSE TO MOTION TO INTERVENE

### Introduction

Henry Golcynski, Lisa Moore, Kevin Fisher, John Lilley, Marlena Gregory, Caleb Gregory, Brian Gregory, June Lilley Holt, Jim McCormack III, Annmarie Shannon, Shane Davis, and Ronald Todd, (hereinafter referred to as "Rutherford Intervenors"), are residents and landowners, who are immediate neighbors of the Islamic Center of Murfreesboro in Rutherford County, Tennessee, and hereby reply to the U.S response to their Motion to Intervene as follows:

### I. Rutherford Intervenors' Claims Are Based On Chancery Findings
### To Which This Court Must Defer and
### Findings of the Federal Court in the Holyland Foundation Criminal Prosecution

The United States' claim that Rutherford Intervenors' arguments are baseless is refuted by both the record in the Rutherford County Chancery Court, and by the successful criminal prosecution by the United States Department of Justice (hereinafter referred to as "DOJ") in the Holyland Foundation trial (*United States v. Holy Land Foundation for Relief and Development, et al.*, 3:04-CR-0240-G). Certified copies of the *Holyland* trial brief, and portions of the

1

applicable record, were submitted to Chancery as Addendum A Exhibits (Addendum A was submitted with the Motion to Intervene) attached hereto and made a part hereof. Although rejected in any Chancery evaluation of the question of "adequate notice" under the Tennessee Open Meetings Act, they are pivotal and contrary to any finding of an RLUIPA violation.

### (a) Chancery Evidence is Probative on the Issue of Scope of ICM's "Religious Exercise" Under RLUIPA

Declarations by Iman Bahoul and Saleh Sbenaty about the needs of the worshipers of the Mosque tell only one small part of the activities in which the Islamic Center is involved. The evidence submitted by Rutherford Intervenors show "the rest of the story." Omitted from the record in this case so far are the (1) public rallies for Hamas that began in 2009, and were repeated in 2010, that were included in the ICM Annual Report; (2) website promotions by ICM leaders promoting martyrdom and killing Jews for Palestine; and (3) the reading list on the ICM website, which contains Muslim Brotherhood leaders and operatives, two of whom were unindicted co-conspirators in the *Holyland* trial (*See* Addendum A Exhibit D). This evidence is compelling proof that many, if not most, of the activities of the ICM apparent to the public in Rutherford County are outside the scope of "religious exercise" protected by RLUIPA. Testimony in the Chancery Proceedings affirmed that most of the evidence was "scrubbed" by the ICM after its discovery by the public. Yet, most of this testimony was probative on the question of whether the ICM was a religious institution entitled to a use of right under Rutherford County Zoning Ordinances. None of it was offered by Defendant Rutherford County in this proceeding.

2

applicable record, were submitted to Chancery as Exhibits to Addendum A, attached hereto and made a part hereof. Although rejected as irrelevant to the question of "adequate notice" under the Tennessee Open Meetings Act, they are pivotal and contrary to any finding of an RLUIPA violation.

### (a) Chancery Evidence is Probative on the Issue of Scope of ICM's "Religious Exercise" Under RLUIPA

Declarations by Iman Bahoul and Saleh Sbenaty about the needs of the worshipers of the Mosque tell only one small part of the activities in which the Islamic Center is involved. The evidence submitted by Rutherford Intervenors show "the rest of the story." Omitted from the record in this case so far are the (1) public rallies for Hamas that began in 2009, and were repeated in 2010, that were included in the ICM Annual Report; (2) website promotions by ICM leaders promoting martyrdom and killing Jews for Palestine; and (3) the reading list on the ICM website, which contains Muslim Brotherhood leaders and operatives, two of whom were unindicted co-conspirators in the *Holyland* trial (*See* Addendum A Exhibit D). This evidence is compelling proof that many, if not most, of the activities of the ICM apparent to the public in Rutherford County are outside the scope of "religious exercise" protected by RLUIPA. Testimony in the Chancery Proceedings affirmed that most of the evidence was "scrubbed" by the ICM after its discovery by the public. Yet, most of this testimony was probative on the question of whether the ICM was a religious institution entitled to a use of right under Rutherford County Zoning Ordinances. None of it was offered by Defendant Rutherford County in this proceeding.

2

The DOJ claims that the evidence referenced in Addendum A is not credible. However, the evidence was authenticated by both a former assistant Secretary of Defense, and by the FBI agent primarily responsible for monitoring the Muslim Brotherhood. That authenticated evidence included:

(1) Documents seized from a key Hamas leader affirming the seditious goals of the Muslim Brotherhood in the United States (Addendum Exhibit F);

(2) The ICM's constitution on the ICM website stating that ICM is governed by Sharia or Islamic Law and that it is a regional center targeting not only Murfreesboro, but also Shelbyville, Manchester, Lebanon, Tullahoma, Franklin, and Woodbury (Addendum Exhibit D);

(3) The Muslim Brotherhood's bylaws which describe the role of its Islamic Centers as places where the "Battalions" are mustered for battle (Addendum Exhibit E); and

(4) Fatwas declared by Yusef Qaradawi, the spiritual head of the Muslim Brotherhood, which call for the killing of US troops in Iraq (Guandolo Deposition Summary, Addendum A, p.12), and affirming that the battles for the Egyptian Revolution were mustered through its Mosques (Coughlin Deposition Excerpts in Addendum A, p. 13).

Although ruled irrelevant by the Chancellor to the notice issue, this evidence was probative on the question of which activities of the ICM are outside the scope of "religious exercise." The answer to the questions raised by this evidence – what is the scope of the ICM religious exercise" - is essential to determine whether the notification ruling by the Chancellor under the Tennessee Open Meetings Act imposes a "substantial burden" on ICM.

### (b) No Case Cited by the DOJ Refute Rutherford Intervenors' Right to Intervene

The DOJ misreads the requirements of Fed. R. Civ. P. 24(a), and Rutherford Intervenors' intentions in this matter. Rutherford Intervenors do not seek to intervene as defendants, but as plaintiffs, with a cause of action for violation of their civil rights. No complaint was attached to their Motion to Intervene, as it would be inconsistent with their motion to dissolve the TRO for lack of jurisdiction or abstention. They are not in the same situation as the neighbors of the RLUIPA plaintiffs in *Williams Island Synagogue*, or the Ohio Civil Rights Commission in the *Brewer* case. Rutherford Intervenors are more than simply "private citizens," and, unlike the *Brewer* case where the Ohio Commission that had not yet litigated a state lawsuit to conclusion, Rutherford Intervenors are the prevailing parties in the State Case, which established a violation of the Tennessee Open Meetings act by Defendant Rutherford County, causing further construction of the ICM without a valid site plan to be in violation of T.C.A. §13-7-111[1]. Rutherford Intervenors' interests in this matter are in preventing a violation of their Due Process and Equal Protection Rights infringed by (1) the violation of the Rutherford Zoning Resolution by the ICM's continued construction without a valid site plan, and (2) and Defendant Rutherford

---

[1] It is **unlawful to erect, construct, recostruct, alter, maintain or use any building or structure or to use any land in violation of any regulation in any provision of any ordinance** or any amendment thereof enacted or adopted by any county legislative body under the authority of this part. A violation of this part is a Class C misdemeanor. Each and every day during which such illegal erection, construction, reconstruction, alteration, maintenance or use continues is deemed a separate offense. In case any building or structure is or is proposed to be erected, constructed, reconstructed, altered, maintained or used or any land is or is proposed to be used in violation of this part or of any regulation or provision enacted or adopted by any county legislative body under the authority granted by this part, such county legislative body, the attorney general and reporter, the district attorney general for the judicial district in which such violation occurs or is threatened, the county building commissioner or any adjacent or neighboring property owner who would be specially damaged by such violation, in addition to other remedies provided by law, may institute injunction, mandamus, abatement or any other appropriate action, actions, proceeding or proceedings to prevent, enjoin or abate or remove such unlawful erection, construction, reconstruction, alteration, maintenance or use.

4

County's failure to pursue the required remedy for violations of the Tennessee Open Meetings Act – a second vote on the ICM site approval pursuant to adequate public notice. The Chancery Court has stayed all its orders based upon the pendency of this Federal action, so it's less than disingenuous for the DOJ to argue that they "may advance that interest in pending state-court litigation."

### (c) The Chancery Finding of a Violation of the Open Meetings Act Disproves The Essential Fact Underlying the Temporary Restraining Order and Erroneous Finding of the RLUIPA Violation

DOJ claims that County compliance with the Tennessee Open Meetings Act is not an issue in this case, but this claim is contradicted by the only material factual allegations that the DOJ set forth in its complaint in support of finding a RLUIPA violation:

> "Doug Demosi, the Rutherford County Planning Director, treated the Islamic Center's site-plan application no differently than he would have treated an application from a church or any other religious organization." (DOJ Complaint Paragraph 29).

> "With the exception of inadvertently failing to post notice of the meeting on the County's internet web page, the County provided notice of the May 24, 2010 meeting in the same manner it provided notice for other religious and secular land-use applications." (DOJ Complaint Paragraph 30).

> "Since 2000, the County has approved at least twenty church site use plans, and has used the same procedures as were used to approve the Islamic Center's proposal." (DOJ Complaint Paragraph 49).

These facts were essential to the holding of this Court issuing the TRO that the Chancery Proceedings Order imposed a "heightened notice requirement." However, there is no support for

5

this claim in either the Chancery Record, or in the proceedings before this court, beyond the arguments of counsel for Defendant Rutherford County. There was no evidence of notice supplied in other approvals of religious institutions, as each case is determined on its own facts and the "totality of the circumstances," as required by the Tennessee Supreme Court. There was no evidence of the extent of actual notice, i.e., where the other sites were, whether neighbors were notified, whether the County website noticed the time, date, and place of the meeting, which neighbors with an interest attended, and/or how many advertised notices were distributed, and to whom. Consequently, there is absolutely no factual record to support the TRO issued by this Court. This defense is one that the Rutherford Intervenors have in common with the Defendant Rutherford County, but, since Rutherford County has made no effort to raise it, their failure affirms that Rutherford Intervenors will be substantially harmed if prevented from intervening in this matter. Secondly, Defendant Rutherford County claims to represent the public safety of all Rutherford citizens, but has made no effort to raise questions concerning the actions of the ICM board members in their rallies and websites promoting terrorist objectives of Hamas, either in the chancery, or in these, proceedings.

In addition, DOJ's claim that the Tennessee Open Meetings Act imposes "a substantial burden" on ICM contradicts the finding of the Chancery Court that the notice effected for the ICM approval was inadequate, and below the standards applied equally to all site applicants. In short, it will require that the District Court determine that the Chancery decided wrongly. Such action requested by the DOJ of the District Court is improper.

> "A district court is also barred from considering constitutional claims 'inextricably intertwined' with state court's judgment." (*District of Columbia Court of Appeals v. Feldman* (1983) 460 US 462, 483, 103 S.Ct. 1303, 1316, fn. 16).

6

"A federal claim is 'inextricably intertwined' with a state court decision if its success depends on a determination that the state court wrongly decided the issues before it." (*Davani v. Virginia Dept. of Transp.* (4th Cir. 2006) 434 F3d 721, 717; *Reusser v. Wachovia Bank, N.A.* (9th Cir. 2008) 525 F3d 855, 859).

Rutherford Intervenors brought suit in State Court and obtained a judgment finding that Rutherford County violated the Tennessee Open Meetings Act, by failing to provide proper notice. Contrary to this, the DOJ argues that some other reason was relied on by the State Court in rendering its decision, and that the Chancery ruling should be disregarded. As Rutherford Intervenors stated in their original motion before this Court, the DOJ is mischaracterizing the decision of the Chancery to Rutherford Intervenors' injury, and any decision by the District Court contrary to the findings of the Chancery will require that this Court find that the state court decided wrongly, thus causing the District Court to act as an Appellate review of a state law court. Again, this is compelling evidence that, absent intervention, Rutherford Intervenors will be substantially harmed.

## II. Neither the County Nor the ICM Have Exercised or Argued The Legal Remedy Provided Under The Tennessee Open Meetings Act

The rights of Rutherford Intervenors, and the remedy available, as mandated by the Tennessee Open Meetings Act, is probative of whether the actions taken by the County pursuant to Court order "substantially" burden any "free exercise of religion" by the ICM. The remedy is a re-approval by the Rutherford County Planning Commission, after an adequately noticed meeting, to enable further inspections and a certificate of occupancy. This will cause a slight delay to ICM that could not extend beyond a matter of weeks, and cannot, under any stretch of the imagination, constitute a "substantial burden" as required under RLUIPA. Rutherford

Intervenors only seek to ensure that the County and the ICM follow the remedies that are religiously neutral and required by the Tennessee Open Meetings Act. That no other party to this proceeding made this obvious argument is the most compelling omission arguing for allowing their intervention in this matter.

## CONCLUSION

For the foregoing reasons, Rutherford Intervenors respectfully urge this Court to grant its Motion to Intervene.

Respectfully Submitted,

---
JOE M. BRANDON, JR. #016601
119 North Maple Street
Murfreesboro TN 37130
(615) 890-3656

---
J. THOMAS SMITH #003613
2020 Fieldstone Parkway
Suite 900-264
Franklin, Tennessee 37069-4337
(615) 790-2150

.

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was electronically filed this ___ day of _____, 2012. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/
Joe M. Brandon