UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:12-0737 |
| | ) | Judge Sharp |
| RUTHERFORD COUNTY TENNESSEE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Pending before the Court is an Amended Motion to Intervene (Docket No. 23) filed by putative Cross-Plaintiffs Henry Golcynski, Lisa Moore, Kevin Fisher, John Lilley, Marlena Gregory, Caleb Gregory, Brian Gregory, Jim Holt, June Lilley Holt, Jim McCormack III, Annmarie Shannon, Shane Davis, and Ronald Todd. The Government has filed a response in opposition to the Motion (Docket No. 26), while Defendant Rutherford County has filed a response, taking "no position on whether this Court should allow the putative Plaintiffs to intervene[.]" (Docket No. 27 at 13).

On August 24, 2012, the Court heard oral argument on the Amended Motion to Intervene. For the reasons that follow, the Amended Motion to Intervene will be granted subject to certain limitations.

### I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

This is an action for injunctive and equitable relief brought by the United States against Rutherford County, Tennessee under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc-2000cc-5. On July 18, 2012, Judge Campbell issued a Temporary Restraining Order, requiring Rutherford County to (1) process the Islamic Center of

1

Murfreesboro's ("ICM's" or "the Center's") request for a certificate of occupancy for the mosque on Veals Road by performing a final building inspection; and (2) issue, on or before July 19, 2012, a certificate of occupancy for the mosque if the building complied with applicable codes and regulations, and, if the building did not comply with applicable codes and regulations, to notify the Center of the specific deficiencies, and to promptly re-inspect the building after the Islamic Center informed the County that it had corrected the deficiencies. (Docket No. 7 at 4). The Temporary Restraining Order was subsequently extended in accordance with the agreement of the parties by Order of the Court dated July 26, 2012 (Docket 14). On August 24, 2012 when the extended Temporary Restraining Order was scheduled to expire, the Government withdrew its request for a preliminary injunction because a final certificate of occupancy had been issued the previous day.

Nine days after the issuance of the initial Temporary Restraining Order, adjacent landowners, all of whom had been Plaintiffs in Rutherford County Chancery Court actions involving issues surrounding construction of the mosque, filed a Motion to Intervene (Docket No. 15). After briefing, the Court denied the Motion for failure to comply with the requirement that a Motion to Intervene "be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). The Amended Motion to Interevene followed.

The record reflects that the putative interveners prevailed on some of their claims in the Chancery Court actions. Those cases arose after Rutherford County Regional Planning Commission approved the Center's site plan on May 24, 2010, and construction of the mosque began in August of 2010.

On September 16, 2010, the putative interveners in this case sued Rutherford County in state Chancery Court in an effort to halt construction of the mosque. Estes, *et al.* v. Rutherford County

Regional Planning Commission, *et al.*, No. 10-cv-1443 (Ch. Ct. 2010). Among other things, Plaintiffs alleged that Rutherford County failed "to provide a hearing to examine the multiple uses of the ICM site and the risk of actions promoting Jihad and terrorism," and neglected to consider "evidence of elevated risks to the public safety of citizens of Rutherford County from the proposed ICM compound," in light of "evidence" purportedly suggesting that two ICM Board Members supported, or were affiliated with, "Hamas – an entity designated by the Untied States as [a] terrorist organization[.]" (Docket No. 4-1 at 16 & 19). In Count I and II of the Complaint, they claimed the May 24, 2010 meeting, during which the site plan was approved, violated the Tennessee Open Meeting Act, Tenn. Code Ann. § 8-44-101, *et seq.*, and in Count III claimed they were denied the due process protections afforded under the Tennessee Constitution. (Id. at 20). Plaintiffs sought a restraining order that would prohibit Rutherford County from "taking any further steps to advance approval" for the construction of the mosque, and an order declaring the site plan approval for the mosque void. (Id. at 20-21).

The Chancery Court held a lengthy evidentiary hearing over the course of eight days on Plaintiffs' request for injunctive relief. Even though the Government was not a party to the proceedings, it filed an *amicus curiae* brief because Plaintiffs had allegedly "put into controversy whether Islam is a religion and whether a mosque is entitled to treatment as a place of religious assembly for legal purposes." (Docket No. 4-9 at 1). In its brief, the Government pointed out that the Department of Justice is charged with enforcing RLUIPA, and then argued:

> RLUIPA codified First Amendment protections for places of worship and other religious uses of real property with regard to local land use laws, and provided a mechanism for enforcement. . . . RLUIPA provides, among other things, that a local government may not use land-use regulations to impose a substantial burden on religious exercise, unless that burden is the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc(a). It also provides that a

3

> local government may not impose a land use regulation in a way that discriminates against a religious assembly or institution based on religion or religious denomination, or treats a religious assembly or institution on less than equal terms than a nonreligious one. Id. at §2000cc (b)(1), (2). In enacting RLUIPA, Congress intended to provide religious institutions the maximum amount of free-exercise protection permitted by the Constitution. See id. at § 2000cc-3(g).

(Id. at 2-3).

On November 23, 2010, the Chancery Court denied Plaintiffs' request for preliminary injunctive relief. Thereafter, on May 17, 2011, the Chancery Court entered an Order granting Rutherford County's motion to dismiss all claims, except Plaintiffs' claims under the Tennessee Open Meetings Act.

After another hearing, the Chancery Court issued an opinion on May 29, 2012, holding that the notice given in advance of the Planning Commission's May 24, 2010 meeting was inadequate under Tennessee law and, as a consequence, the Center's site plan approval was void. Nevertheless, the court declined to enter an injunction "directing the County officials and third parties to cease construction" at the mosque site, and noted that the request for such relief should be in the form of a mandamus action. (Docket No. 4-13 at 3 n.1).

Days later, the Plaintiffs in the underlying action, now joined by several others, filed a Verified Petition for Writ of Mandamus or, in the Alternative, Injunctive Relief in a case styled Fisher, *et al.* v. Rutherford County, *et al.*, No. 12-cv-853 (Ch. Ct. 2012). In that case, Plaintiffs requested that Rutherford County (1) be compelled to enforce the local zoning resolution, and (2) be enjoined from taking further action, or permitting the Center from taking further action in relation to development of the site and construction of the mosque. (Docket No 4-14 at 4-5). Acting on the Verified Petition, the Chancery Court, on June 13, 2012, enjoined Rutherford County from issuing a certificate of occupancy that would allow the Center to occupy and use the mosque which, by now,

4

was almost, if not entirely, completed.

It was against this backdrop that the Government filed the present suit seeking injunctive relief. Even though the putative interveners in this case prevailed on a claim in the Chancery Court which halted further activity at the mosque site, even though the Government participated in the underlying state court litigation as an amicus, and even though the relief requested by the Government in this case would render the Chancery Court's ruling a nullity, neither the putative interveners, nor their counsel, were informed of the filing of this action.

## II. **LEGAL DISCUSSION**

Motions to intervene are governed by Rule 24 of the Federal Rules of Civil Procedure. Rule 24(a) provides:

> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:
>
> (1) is given an unconditional right to intervene by a federal statute; or
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a). The Sixth Circuit "has interpreted the language of the Rule to require an applicant to show that: 1) the application was timely filed; 2) the applicant possesses a substantial legal interest in the case; 3) the applicant's ability to protect its interest will be impaired without intervention; and 4) the existing parties will not adequately represent the applicant's interest." Blount-Hill v. Zelman 636 F.3d 278, 283 (6th Cir. 2011). Grutter v. Bollinger, 188 F.3d 394, 397–98 (6th Cir.1999). "Each of these elements is mandatory, and therefore failure to satisfy any one of the elements will defeat intervention under the Rule." Id.

5

In this case, the Amended Motion to Intervene is timely. The original Motion to Intervene was filed a mere nine days after the Complaint, and the Court granted leave until August 10, 2012 within which to file an Amended Motion to Intervene. See, Jansen v. City of Cincinnati, 904 F.2d 336, 340 (6th Cir. 1990) (listing factors to be considered in determining timeliness, including how far the case has progressed, how long the proposed intervener knew of their interest in the case, and the prejudice to the original parties resulting from the proposed intervener's failure to timely assert an interest in the case).

The second factor under Rule 24(a), and the only one the Government contests, is whether the putative interveners possess a substantial legal interest in the case. The putative interveners assert that they "are victims of the ICM and Defendant Rutherford County's violation of the Rutherford County Zoning Resolution and the County['s] violation of the Tennessee Open Meetings Act and have particularized injury to their rights to seek remedies for violations of law as neighboring and adjacent landowners." (Docket No. 23 at 10).

In response, the Government begins by noting that the only claim it brings is one under RLUIPA, and argues that the Act provides a cause of action only to those who have a property interest in the regulated land, or a contract or option to acquire that land. It cites several cases for that proposition, including Prater v. Burnside, 289 F.3d 417, 434 (6th Cir. 2002), Taylor v. City of Gary, 233 Fed. App'x 561 (7th Cir. 2007), and Omnipoint Comm'n, Inc. v. City of White Plains, 202 F.R.D.402, 403 (S.D.N.Y. 2001).

Those cases are inapposite. While the church in Prater had no RLUIPA interest in how the city used city-owned land, while the minister in Taylor could not state a RLUIPA claim based on the city's decision to demolish a church in which he had no interest, and while the synagogue in

6

Omnipoint had no basis under RLUIPA to challenge the construction of a monopole on someone else's land, none of those cases involved a situation where a potential intervenor sought to preserve a state court's ruling in its favor.

Additionally, for purposes of intervention, it is not necessary that the intervenor advance the exact same legal theory presented by the parties already in the litigation; they need only have an interest relating to the property or transaction. See Liberte Capital Group LLC v. Capwill, 126 Fed. Appx. 214, 219 (6th Cir. 2005). "[T]he interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process, " and, "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene[.]" San Juan County v. United States, 503 F.3d 1163, 1203 (10th Cir.2007), Thus, "[a]lthough the intervenor cannot rely on an interest that is wholly remote and speculative, the intervention may be based on an interest that is contingent upon the outcome of the litigation." United States v. Union Elec. Co., 64 F.3d 1152, 1162 (8th Cir. 1995). Certainly a litigant has at least some interest in preserving a favorable ruling it receives from a court of competent jurisdiction. See, Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 110 (1968) ("if the plaintiff has won, he has a strong . . . interest in preserving his judgment").

The Government's observation that "Rule 24(a) has most commonly been applied to permit intervention where the intervenor, in fact, claims an interest in property" (Docket No. 26 at 6), while true, does little to persuade the Court that intervention is unwarranted simply because the putative interveners do not have a stake in the real property upon which the mosque sits. Rule 24(a), by its own terms, is not so self-limiting. Moreover, the Sixth Circuit "has opted for a rather expansive

7

notion of the interest sufficient to invoke intervention of right," Michigan State AFL-CIO v. Miller, 103 F.3d 1240, 1245 (6th Cir. 1997), and has held that "Rule 24 should be 'broadly construed in favor of potential intervenors.'" Stupack -Thrall v. Glickman, 226 F.3d 467, 472 (6th Cir. 2000) (citation omitted).[1]

At the hearing on August 24, 2012, the Court asked Government's counsel how the issue of following the Chancery Court's Orders could be separated from the Government's underlying RLUIPA claim, and Rutherford County's actions in relation thereto. The Government was unable to provide a satisfactory answer to this inquiry, and it appears the two issues are inextricably intertwined. Indeed, in its Memorandum in support of its request for a Temporary Restraining Order, the Government asserted:

> The United States does not allege that the County has intentionally discriminated on the basis of religion. The County has consistently treated the mosque as it would a church or other place of worship, as a government body should under our laws and Constitution. The actions of the County challenged here are those that they are required to do pursuant to the orders of the Chancery Court.

(Docket No. 3 at 10, n. 4).

The third factor considered under Rule 24(a) also supports intervention. "To satisfy this element, 'a would-be intervenor must show only that impairment of its substantial legal interest is

---

[1] It may be, as the Government argues, the putative interveners will be unable to prevail on any of their claims. For example, the Government argues that the putative intervenors' claim that this litigation violates the Rooker-Feldman doctrine fails as a matter of law because the Supreme Court has held that the doctrine is confined to "cases brought by state-court losers," Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005), and the Government was not a party, let alone the loser, in the Chancery Court proceedings. But Exxon Mobil also holds that "Rooker-Feldman does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions," nor does it abrogate the Full Faith and Credit Act. Id. at 292-93. None of this is to say that issue preclusion is appropriate in this case, but it is to say that the Rooker-Feldman doctrine goes to the power of the court to hear a case while "[p]reclusion, of course, is not a jurisdictional matter." Id. at 293.

8

possible if intervention is denied[,]' a 'burden [that] is minimal.'" Coalition to Defend Affirmative Action v. Granholm, 501 F.3d 775, 787 (6th Cir. 2007) (quoting, Michigan State AFL-CIO, 103 F.3d at 1247). An adverse determination in this case could conceivably hinder the putative intervenor's interests in the finality of the Chancery Court's Orders finding that that Rutherford County failed to comply with the Tennessee Open Meeting Act and the Zoning Resolution.

Finally, the fourth factor under Rule 24(a) – whether the existing parties will adequately represent the putative intervenor's interests – clearly favors intervention. "This burden has been described as minimal because it need only be shown 'that there is a potential for inadequate representation.'" United States v. Michigan, 424 F.3d 438, 443 (6th Cir. 2005).

Certainly the Government, which filed an *amicus* brief in state court, which did not notice the putative interveners of the filing of this action, and which actively opposes the Amended Motion to Intervene will not protect their interest. Nor is it likely that their interest will be protected by Rutherford County since its position all along has been that it complied with the Tennessee Open Meetings Act and the Zoning Resolution, and since it takes no position as to whether intervention should be allowed.

Alternatively, intervention is warranted under Rule 24(b), which allows for permissive intervention. So far as relevant, that Rule provides that, "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed.R.Civ.P. 24(b)(1)(B).

Whether to allow permissive intervention rests in the sound discretion of the Court. Blount-

Hill, 636 F.3d at 287.[2] In this case, and as already explained, there exists a common question of law or fact, specifically, the interplay between the Chancery Court's Orders and the Government's claim that Rutherford County's following of those Orders led to a RLUIPA violation.

Having concluded that intervention is appropriate, it does not necessarily follow that the interveners can present any and all issues they desire. "Federal courts have the authority to apply appropriate conditions or restrictions on an intervention as of right," and this may include "'conditions or restrictions responsive . . . to the requirements of efficient conduct of proceedings.'" Friends of Tims Ford v. Tennessee Valley Authority, 585 F.3d 955, 963 (6th Cir. 2009) (citation omitted). Likewise, "'[t]he district court's discretion ... under Rule 24(b), to grant or deny an application for permissive intervention includes discretion to limit intervention to particular issues.'" Dep't of Fair Employment and Housing v. Lucent Tech., Inc. 642 F.3d 728, 741 (9th 2011) (citation omitted); see, Columbus–Am. Discovery Grp. v. Atl. Mut. Ins. Co., 974 F.2d 450, 469 (4th Cir. 1992) ("[w]hen granting an application for permissive intervention, a federal district court is able to impose almost any condition"). Thus, "[i]f the applicant is granted intervention because of an interest that may be injured by the litigation, it does not follow that the intervention must extend to matters not affecting that interest." San Juan County, 503 F.3d at 1189.

In this case, and after due consideration of the arguments raised in the briefs and at oral argument, the Court finds that the putative interveners will be allowed to present their position on

---

[2] The Court recognizes that, "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights, Fed. R. Civ. P. 24(b)(3), and the Government's concern that the addition of dozens of new parties will prove burdensome. As explained immediately below, however, this concern is lessened, if not eliminated, by the Court's limitation on the scope of intervention.

(1) whether the Chancery Court Orders constitute a land use regulation for purposes of RLUIPA; and, if so, (2) whether Rutherford County's following of the Orders place a substantial burden on the Islamic Center of Murfreesboro within the meaning of the RLUIPA.

The proposed intervener's Complaint is directed at an additional forty-five putative Defendants. However, those parties are unnecessary to resolve the question of the continued efficacy of the Chancery Court's Orders in light of the Government's filing the Complaint in this action. This is a determination that can be made based upon the arguments raised by the parties presently in the suit, as well as by the putative interveners. For this reason, while the Court will allow the filing of the interveners' Complaint, service will not issue on that Complaint, nor will the named Defendants be required to answer or otherwise plead unless otherwise directed by the Court. Further, because of the limitations placed on the issues to be addressed by the putative interveners, the Court will not entertain evidence and/or arguments on tangential and non-germane contentions, including, but not limited to, purported concerns about terrorism, and concerns about the alleged affiliations of some of the mosque's members.

### III. CONCLUSION

On the basis of the foregoing, the Amended Motion to Intervene (Docket No. 23) will be granted and the putative interveners will be permitted to intervene in this action, subject to the limitations set forth above.

An appropriate Order will be entered.

*Kevin H. Sharp*
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE